1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT JENKINS, JR.,

11            Petitioner,               No. 2:11-cv-2031 GEB KJN P

12        vs.

13   R. HILL,

14            Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17            Petitioner, a state prisoner, is proceeding without counsel with an application for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the state court's denial

19   of habeas relief in connection with the 2010 decision by the Board of Parole Hearings ("Board")

20   finding that petitioner was unsuitable for parole.  Petitioner contends that the Board's decision

21   violated his due process rights, increased his sentence, and violated his rights under the Ex Post

22   Facto Clause.

23            Pending before the court is respondent's motion to dismiss the petition pursuant to

24   Rule 4 of the Rules Governing § 2254 Cases.  Petitioner filed an opposition, and respondent did

25   not file a reply.  For the reasons stated below, the court recommends that respondent's motion to

26   dismiss be granted.

1   II.  Standards

2          Rule 4 of the Rules Governing Section 2254 Cases allows a district court to

3   dismiss a petition if it "plainly appears from the petition and any attached exhibits that the

4   petitioner is not entitled to relief in the district court . . . ."  Rule 4, Rules Governing Section

5   2254 Cases; see also White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (meritorious motions

6   to dismiss permitted under Rule 4); Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir. 1983)

7   (Rule 4 "explicitly allows a district court to dismiss summarily the petition on the merits when no

8   claim for relief is stated").  However, a petition for writ of habeas corpus should not be dismissed

9   without leave to amend unless it appears that no tenable claim for relief can be pleaded were such

10  leave granted.  Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).  "Summary dismissal is

11  appropriate only where the allegations are vague [or] conclusory or palpably incredible, . . . or

12  patently frivolous or false."  Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990) (internal

13  quotations and citations omitted).

14         Under the standards of the Antiterrorism and Effective Death Penalty Act of 1996

15  ("AEDPA"), federal habeas relief may not be granted with respect to any claim adjudicated on

16  the merits by the state court unless that state decision was (1) "contrary to, or involved an

17  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

18  of the United States;" or (2) "based on an unreasonable determination of the facts in light of the

19  evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Even when a state court

20  provides no reasons for its denial of the federal claim, a habeas petitioner may not obtain relief

21  unless he shows "there was no reasonable basis for the state court to deny relief."  Harrington v.

22  Richter, 131 S. Ct. 770, 784 (2011).  These standards are highly deferential to the state court's

23  decision and "difficult to meet."  Id. at 786.

24  III.  Procedural Due Process Claims

25         The Due Process Clause of the Fourteenth Amendment prohibits state action that

26  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

1  due process violation must first demonstrate that he was deprived of a liberty or property interest

2  protected by the Due Process Clause and then show that the procedures attendant upon the

3  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

4  490 U.S. 454, 459-60 (1989).

5          A protected liberty interest may arise from either the Due Process Clause of the

6  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

7  expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

8  221 (2005) (citations omitted).  The United States Constitution does not, of its own force, create

9  a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen, 454

10  U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no

11  constitutional or inherent right of a convicted person to be conditionally released before the

12  expiration of a valid sentence.").  However, "a state's statutory scheme, if it uses mandatory

13  language, 'creates a presumption that parole release will be granted' when or unless certain

14  designated findings are made, and thereby gives rise to a constitutional liberty interest."

15  Greenholtz, 442 U.S. at 12; see also Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987) (a

16  state's use of mandatory language ("shall") creates a presumption that parole release will be

17  granted when the designated findings are made.).

18          California's parole statutes give rise to a liberty interest in parole protected by the

19  federal due process clause.  Swarthout v. Cooke, 131 S. Ct. 859, 863 (2011).  In California, a

20  prisoner is entitled to release on parole unless there is "some evidence" of his or her current

21  dangerousness.  In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29

22  Cal.4th 616, 651-53 (2002).  However, in Swarthout the United States Supreme Court held that

23  "[n]o opinion of [theirs] supports converting California's 'some evidence' rule into a substantive

24  federal requirement."  Swarthout, 131 S. Ct. at 864.  In other words, the Court specifically

25  rejected the notion that there can be a valid claim under the Fourteenth Amendment for

26  insufficiency of evidence presented at a parole proceeding.  Id. at 864.  Rather, the protection

1   afforded by the federal due process clause to California parole decisions consists solely of  the

2   "minimal" procedural requirements set forth in Greenholtz, specifically "an opportunity to be

3   heard and . . . a statement of the reasons why parole was denied." Swarthout, 131 S. Ct. at 863-

4   64.

5           In Swarthout, the United States Supreme Court reversed two Ninth Circuit

6   decisions that had each examined the sufficiency of evidence supporting a determination that

7   petitioner continued to pose a threat to public safety; in the first case, the Ninth Circuit had

8   reversed the Board's denial of parole, Cooke v. Solis, 606 F.3d 1206, 1213 (2010); in the second

9   case, the Ninth Circuit reversed the Governor's reversal of the Board's grant of parole, Clay v.

10  Kane, 384 Fed. Appx. 544, 546 (2010).  The Supreme Court reversed both judgments of the

11  Ninth Circuit, holding that "[n]o opinion of [the Supreme Court's] supports converting

12  California's 'some evidence' rule into a substantive federal requirement." Swarthout, 131 S. Ct.

13  at 860-61.  In other words, the Court specifically rejected the notion that there can be a valid

14  claim under the Fourteenth Amendment for insufficiency of evidence presented at a parole

15  proceeding.  Id. ("Because the only federal right at issue is procedural, the relevant inquiry is

16  what process [petitioner] received, not whether the state court decided the case correctly.").

17  Rather, the protection afforded by the federal due process clause to California parole decisions

18  consists solely of  the "minimal" procedural requirements set forth in Greenholtz, specifically "an

19  opportunity to be heard and . . . a statement of the reasons why parole was denied." Swarthout,

20  131 S. Ct. at 862.  Provided these procedural requirements are met, it is of no consequence that

21  the final parole decision is made by the Governor rather than the Parole Board.  Id. at 863.

22          On June 6, 2011, the Ninth Circuit held that the Governor is not required to hold a

23  second parole suitability hearing before reversing the Board's determination that the prisoner was

24  suitable for parole.  Styre v. Adams, 645 F.3d 1106 (9th Cir. 2011).

25          Thus, "the beginning and the end of the federal habeas courts' inquiry" is whether

26  petitioner received "the minimum procedures adequate for due-process protection." Swarthout,

4

1   131 S. Ct. at 862.  Here, the record reflects that petitioner was present, with counsel, at the May

2   11, 2010 parole hearing, that petitioner participated in the hearing, and that he was provided with

3   the reasons for the Board's decision to deny parole.  (Dkt. No. 15-1 at 91-98.)  According to the

4   United States Supreme Court, the federal due process clause requires no more.[1]  The court finds,

5   therefore, that petitioner's due process challenge is without merit,  and respondent's motion to

6   dismiss petitioner's due process claims should be granted.

7   IV.  <u>Petitioner's Sentence</u>

8           Petitioner claims that, by failing to consider uniformity in sentencing

9   (proportionality), the Board has transformed his sentence of life with the possibility of parole into

10  a sentence of life without the possibility of parole or a death sentence, in violation of the Eighth

11  Amendment proscription against cruel and unusual punishment, and other constitutional

12  provisions.  (Dkt. No. 1 at 4-5.)  To the extent these claims have been exhausted in state court,

13  they lack a factual basis and should be denied.

14          Summary dismissal of habeas claims is appropriate where the allegations are

15  patently frivolous or false.  <u>Hendricks</u>, 908 F.2d at 491.

16          Petitioner is incorrect that his sentence has been changed to one of life without the

17  possibility of parole or a death sentence.  Petitioner will continue to receive parole suitability

18  hearings and will be released if he demonstrates he is suitable for parole.  Petitioner was

19  sentenced to two consecutive life terms with the possibility of parole, plus eight months, after

20  being convicted in 1992 of torture, mayhem, assault with a deadly weapon resulting in great

21  bodily injury, and infliction of bodily injury on a cohabitant.  (Dkt. No. 1 at 1; 16-1 at 3.)

22  Petitioner's sentence contemplates a potential life term in prison -- a grant of parole is not

23

24          [1]  "The only federal right at issue in the parole context is procedural, and the only proper
    inquiry is what process the inmate received, not whether the state court decided the case
25  correctly.  <u>Stuart v. Carey</u>, 2011 WL 2709255 (9th Cir. 2011), citing <u>Swarthout</u>, 131 S. Ct. at
    863.  Petitioner cannot obtain more process by attempting to characterize his claims in a different
26  way.

1  mandatory, but merely possible.  While petitioner might have hoped or expected to be released

2  sooner, the Board's decision to deny him a parole release date has not enhanced or increased his

3  punishment or sentence.[2]  Accordingly, petitioner is not entitled to federal habeas relief with

4  respect to this claim.

5          To the extent petitioner is claiming his sentence of life in prison with the

6  possibility of parole violates the Eight Amendment, that claim should also be denied.  Petitioner

7  has not demonstrated that his sentence is grossly disproportionate to his crimes.  See Lockyer v.

8  Andrade, 538 U.S. 63 (2003) (two consecutive twenty-five years to life sentences with the

9  possibility of parole imposed for petty theft did not amount to cruel and unusual punishment);

10  Ewing v. California, 538 U.S. 11 (2003) (holding that a sentence of twenty-five years to life

11  imposed for felony grand theft under California's Three Strikes law did not violate the Eighth

12  Amendment); United States v. Bland, 961 F.2d 123, 128 (9th Cir. 1992) (upholding a life

13  sentence without possibility of parole for being a felon in possession of a firearm where

14  defendant had an extensive criminal record).

15  ////

16

17          [2]  Petitioner's argument that the Board's failure to award conduct credits violates
petitioner's constitutional rights fails as well.  The length of time a prisoner must serve prior to
18  actual release on parole is determined by the board.  The amount of postconviction credit a
prisoner may earn to reduce the length of time prior to release on parole is determined by the
19  board.");  Alley v. Carey, 408 Fed. Appx. 11, 12-13 (9th Cir.  Nov. 5, 2010) (good time credit
affects minimum eligible parole date); In re Jenkins, 50 Cal.4th 1167, 1179 (2010) ("[T]he
20  connection between [custody] credits and actual release is greatly attenuated . . . .  [T]o the extent
those inmates [with life terms] . . . receive credits towards their sentence, the credits go only
21  towards advancing their minimum eligible release date, not their actual release from prison.").
When a prisoner reaches his minimum eligible parole date, postconviction credits are not
22  awarded unless and until the Board grants parole.  See Cal. Code. Regs., tit. 15, §§ 2400, 2403,
2410, 2411; Garnica v. Hartley, 2010 WL 3069309, at *2 (E.D. Cal. Aug. 4, 2010) ("Once a
23  prisoner reaches his [minimum eligible parole date], . . . good conduct credits are not awarded
until parole is actually granted by the parole board."); see also In re Bush, 161 Cal. App. 4th 133,
24  141 (Cal. App. 1 Dist. 2008) ("When a life prisoner is found suitable for parole, the Board sets a
release date by calculating a 'base term' for the offense, adjusted by any credits to which the
25  prisoner is entitled.").  In this case, although petitioner has reached his minimum eligible parole
date, he has not yet been granted parole.  Accordingly, petitioner has not demonstrated that he
26  was denied any custody credits or, in turn, that his constitutional rights were violated.

V.   Ex Post Facto Claim

       The Board applied "Marsy's Law" (adopted by the voters pursuant to Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law"), to defer for five years petitioner's next parole hearing.  Petitioner contends the application of Marsy's Law violated the Ex Post Facto Clause of the United States Constitution.[3]

       Prior to the enactment of Marsy's Law, indeterminately-sentenced inmates, like petitioner, could be denied parole hearings for no more than one year unless the Board found, with stated reasons, that it was unreasonable to expect that parole could be granted the following year; in such instances, the next parole hearing could be deferred for a period up to five years. Cal. Penal Code § 3041.5(b)(2) (2008).  Now, Marsy's Law authorizes deferral of a subsequent parole hearing for a period up to fifteen years.  Cal. Pen. Code, § 3041.5(b)(3) (2009).  The shortest interval that the Board may set is three years, based on a finding that the prisoner "does not require a more lengthy period of incarceration . . . than seven additional years."  Id., § 3041.5(b)(3)(C).  Under the terms of the amended statute, petitioner's next parole hearing was deferred for a period of five years.  (Dkt. No. 15-1 at 96.)

       The federal Constitution provides that, "No State shall . . . pass any . . . ex post facto Law."  U.S. Const. art. I, § 10.  A law violates the Ex Post Facto Clause of the Constitution if it:  (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a

---

[3]  While not entirely clear, it appears petitioner attempts to argue a separate claim that the application of Marsy's Law also "changed the rules of evidence considered at these hearings." (Dkt. No. 13 at 37.)  Petitioner then recites the provisions of Cal. Penal Code § 3041.5, subds. (b)(3) - (4).  (Dkt. No. 13 at 37-38.)  Prior to concluding, petitioner claims that "the evidence has become more onerous."  (Dkt. No. 13 at 39.)  However, he fails to support this contention with any facts or argument.  Petitioner's claim in this regard is vague and conclusory and should be denied on that basis.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  In any event, petitioner has failed to demonstrate that the Board's application of Marsy's Law resulted in a change in the factors the Board considered in determining whether petitioner should be granted parole.

1   defense available at the time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52

2   (1990).  The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of

3   crimes or increase the punishment for criminal acts."  Himes v. Thompson, 336 F.3d 848, 854

4   (9th Cir. 2003) (citations and internal quotations omitted); see also California Dept. of

5   Corrections v. Morales, 514 U.S. 499, 504 (1995).  The Ex Post Facto Clause is also violated if:

6   (1) state regulations have been applied retroactively to a defendant; and (2) the new regulations

7   have created a "sufficient risk" of increasing the punishment attached to the defendant's crimes.

8   Himes, 336 F.3d at 854.  However, not every law that disadvantages a defendant is a prohibited

9   ex post facto law.  The retroactive application of a change in state parole procedures constitutes a

10  prohibited ex post facto law only if there exists a "significant risk" that such application will

11  increase the punishment for the crime.  See Garner v. Jones, 529 U.S. 244, 255 (2000).

12          Previous amendments to California Penal Code § 3041.5, allowing for longer

13  periods of time between parole suitability hearings, have been upheld against challenges that they

14  violated the Ex Post Facto Clause.  See Morales, 514 U.S. at 509 (1981 amendment to § 3041.5,

15  which increased maximum deferral period of parole suitability hearings to five years, did not

16  violate the Ex Post Facto Clause because it simply altered the method of setting a parole release

17  date and did not create a meaningful "risk of increasing the measure of punishment attached to

18  the covered crimes"); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not a violation

19  of the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life

20  imprisonment prior to implementation of California's Determinate Sentence Law in 1977);

21  Clifton v. Attorney General Of the state of California, 997 F.2d 660, 662 n.1 (9th Cir. 1993)

22  (same); see also Garner, 529 U.S. at 249 (upholding Georgia's change in the frequency of parole

23  hearings for prisoners serving life sentences, from three to eight years, in an action brought

24  pursuant to 42 U.S.C. § 1983).

25          After reviewing the facts applicable to petitioner's ex post facto claim, clearly

26  established federal law as determined by the Supreme Court, and California statutes and

8

1    regulations related to the frequency of subsequent parole hearings, the court finds that the state

2    court decisions rejecting petitioner's ex post facto claim are not contrary to, nor do they involve

3    an unreasonable application of, clearly established federal law as determined by the Supreme

4    Court.  28 U.S.C. § 2254(d).  The state court decisions are not out of line with the decisions

5    reached by the Supreme Court in both Morales and Garner, especially in light of the fact that, as

6    in Morales and Garner, the Board can expedite a suitability hearing if it believes an inmate

7    should be paroled.  See Cal. Penal Code § 3041.5(b)(4) ("The board may in its discretion . . .

8    advance a hearing . . . when a change in circumstances or new information establishes a

9    reasonable likelihood that consideration of the public and victim's safety does not require the

10   additional period of incarceration . . . ."); see also id., § 3041.5(d) (1) ("An inmate may request

11   that the board exercise its discretion to advance a hearing. . . .").

12            Therefore, the court finds that petitioner is not entitled to relief on his ex post

13   facto claim, Rule 4, Federal Rules Governing § 2254 Cases, and should be dismissed without

14   prejudice.[4]

15   VI.  Conclusion

16            For all of the above reasons, IT IS HEREBY RECOMMENDED that this action

17   be summarily dismissed.  Rule 4, Rules Governing Section 2254 Cases.

18   ////

19

20            [4] Petitioner is informed that there is a civil rights class action, filed pursuant to 42 U.S.C.
     § 1983, that is currently pending in this court, in which it is alleged that "Marsy's Law" violates
21   the Ex Post Facto Clause of the Constitution.  The action is Gilman v. Fisher, Case No. 2:05-cv-
     0830 LKK GGH P, and the classes of persons identified as plaintiffs therein are:  (1) "all
22   California state prisoners who have been sentenced to a life term with possibility of parole for an
     offense that occurred before November 4, 2008;" (2) "all California state prisoners who have
23   been sentenced to a life term with possibility of parole and have reached eligibility for a parole
     consideration hearing;" and (3) "all California state prisoners who have been sentenced to a life
24   term with possibility of parole for an offense that occurred before November 4, 2008."  See id.,
     Order filed April 25, 2011 (Dkt. No. 340 at 2).  Petitioner may be a member of one or more of
25   these classes.  In general, a member of a class action may not pursue an individual action for
     equitable relief that is also sought by the class.  See e.g. Crawford v. Bell, 599 F.2d 890, 892-93
26   (9th Cir. 1979).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 29, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

jenk2031.mtd.bph

10